UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────x

**EFRAIN TARAX TARAX, GETULIO
LOPEZ MURILLO, MANUEL JESUS
SONTAY HERRERA[1] and SANTOS TARAX,**
*individually and on behalf of others similarly
situated*,[2]

                       Plaintiffs,

                       1:19-cv-06228-JSR

    —against—

**BLOSSOM WEST INC. (D/B/A BLOSSOM
ON COLUMBUS), RONEN SERI,[3] RAMIRO
RAMIREZ, JESUS DOE and CHINO DOE**,[4]

                       Defendants.

───────────────────────────────────────x

### MEMORANDUM OF LAW IN OPPOSITION TO FEE APPLICATION AND PREJUDGMENT INTEREST

This memorandum is submitted on behalf of defendants Blossom West Inc. (D/B/A Blossom on Columbus) and Ramiro Ramirez in opposition to the fee application of the

---

[1]Though a plaintiff from the inception of the case, and claiming to have been underpaid by $79,522.50, Manuel Jesus Sontay Herrera failed to appear for trial and his claims were dismissed with prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), with the Court retaining "jurisdiction over said plaintiff and his present and former attorneys for any additional relief pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, the Court's inherent authority, and otherwise. ECF No. 91. He had been a plaintiff since the filing of this action on July 3, 2019 (ECF No. 1), claiming to have "been employed by Defendants at Blossom on Columbus from approximately April 24, 2016 until [July 3, 2019]" (Compl. ¶ 25), that he "has regularly worked in excess of 40 hours per week" (Compl. ¶ 95), asserting that he has been underpaid by $79,522.50 (Pls.' Init. Discls. Ex. E).

[2]Though initiated as such (ECF No. 1), there has been no class action certification nor has this action been prosecuted as a collective action.

[3]All claims against defendant Ronen Seri were dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(2). ECF No. 82.

[4]Neither of the "Doe" defendants has been identified or served and have been dismissed from the case.

remaining plaintiffs' (successor) attorneys CSM Legal, P.C. , seeking $57,390.00 in fees and disbursements, ECF Nos. 94 (Notice of Motion), 95 (Declaration), 96 (Memorandum of Law), of which $48,765.00 is sought for themselves plus $7,950.00 in fees and $675.00 in disbursements gratuitously sought for a predecessor law firm ("Michael Faillace & Associates, P.C."),[5] the sole principal of which was suspended from practice in November 2021.[6] After that, the case was taken over by new attorneys with CSM Legal, P.C.,[7] though the terms of engagement for either firm are unclear, since no Letter of Engagement[8] is submitted for either firm.

The Fees Sought Should Be Reduced for Duplication and Excess

First off, there appears to be no Letter of Engagement or equivalent, there is no basis upon which to award fees other than "quantum meruit." "Instead, 'in the absence of a letter of engagement,' attorneys may seek '*quantum meruit* recovery.' *Simon v. Sack*, 451 F. App'x 14,

---

[5] From the inception of this action on July 3, 2019 until November 5, 2021, plaintiffs were represented by Michael Faillace and his firm "Michael Faillace & Associates, P.C.," with various junior attorneys associated with him from time to time (Yolanda Rivera, Esq. (ECF No. 13; ECF No. 35); Jordan Gottheim, Esq. (ECF No. 36; ECF No. 65); Catalina Sojo, Esq. (ECF No. 67)).

[6] Mr. Faillace was suspended on November 11, 2021 for a two-year period. *See Lazaro v. Best Fish Mkt. Corp.*, No. 21-cv-5305 (BMC), 2022 U.S. Dist. LEXIS 17015, *6 (E.D.N.Y. Jan. 29, 2022) (noting that Mr. Faillace "has been suspended from practice for two years by the Grievance Committee of the Southern District of New York on November 9, 2021, as a result of repeatedly taking fees from settlements in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries); refusing to follow client directions as to the amounts they wanted to settle the case; and of misrepresenting facts relating to these practices to the Southern District Committee").

[7] We do not cast any aspersions on the attorneys who handled the case under the aegis of CSM Legal, P.C., who were at all times professional and capable.

[8] Such Letters are required by Joint Order of the Appellate Divisions effective March 4, 2002, 22 N.Y.C.R.R. § 1215.1, with limited exceptions, 22 N.Y.C.R.R. § 1215.2, that do not appear to be applicable.

17 (2d Cir. 2011) (summary order)." *Mintz Fraade Law Firm, P.C. v. Brady*, No. 1:19-cv-10236-JMF, 2022 U.S. Dist. LEXIS 69956, *7 (S.D.N.Y. Apr. 15, 2022).

The contours of fee applications are well established, and militate against excessive and duplicative fees. "'Among the factors to be considered in [ascertaining the reasonable value of services rendered] are the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known).'" *Simon v. Sack*, 451 F. App'x 14, 17 (2d Cir. 2011) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)) (summary order).

> Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 U.S. Dist. LEXIS 79037, 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of the work performed [and] the relative simplicity of the issues involved" (internal quotation marks and citations omitted)).

*Mendoza v. Cavallo's of Chelsea, Inc.*, No. 1-18-cv-11147-VSB-DF, 2022 U.S. Dist. LEXIS 68719, *26-27 (S.D.N.Y. Apr. 12, 2022) (report and recommendation).

> "In determining the proper number of hours for which a defendant should be compensated, the district court should exclude excessive, redundant, or otherwise unnecessary hours, as well as hours

>
> dedicated to severable unsuccessful claims." *Liang Huo*, 2014 U.S. Dist. LEXIS 51621, 2014 WL 1413532, at *8 (brackets and internal quotation marks omitted). "The Court should examine contemporaneous time records that identify, for each attorney, the hours expended on a task, with a view to the value of the work product of the specific expenditures to the client's case." *Angamarca*, 2012 U.S. Dist. LEXIS 108322, 2012 WL 3578781, at *12 (internal quotation marks omitted). The Court "must determine how much of that time was reasonably expended," based on the Court's "own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gonzalez*, 2015 U.S. Dist. LEXIS 78620, 2015 WL 3757069, at *22 (internal quotation marks and ellipsis omitted).
>
> *Jimenez v. KLB Foods, Inc.*, No. 1:12-cv-6796-JPO, 2015 U.S. Dist. LEXIS 84370, *7 (S.D.N.Y. June 29, 2015).

In short, in reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-35, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). *E.g.*, *Cruz v. JJ's Asian Fusion Inc.*, No. 1:20-cv-5120-MKB-RML, 2022 U.S. Dist. LEXIS 5641, *31 (E.D.N.Y. Jan. 11, 2022) (finding that "Mr. Faillace's billings . . . include redundant or unnecessary tasks" and recommending "reducing his fees by fifty percent"), *adopted*, 2022 U.S. Dist. LEXIS 33582 (E.D.N.Y. Feb. 24, 2022); *see also Rotella v. Board of Educ.*, No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); *Quinn v. Nassau City Police Dep't*, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by twenty percent and another's by thirty percent for unnecessary and redundant time); *Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a twenty percent reduction for redundancy).

As discussed in the accompanying declaration, there was considerable duplication and excess involved, with no explanation why a straightforward FLSA case such as this necessitated extra attorneys "sitting in." "'While parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys . . . they may not foist their extravagances upon their unsuccessful adversaries.'" *NAACP v. E. Ramapo Cent. Sch. Dist.*, 2020 U.S. Dist. LEXIS 243848, at *33 (S.D.N.Y. Dec. 29, 2020) (quoting *Houston v. Cotter*, 234 F. Supp. 3d 392, 405 (E.D.N.Y. 2017)).

Also, while three of they plaintiffs prevailed in recovery, they did so for a fraction of the amounts sought; the claims of a fourth plaintiff were dismissed with prejudice in their entirety; all claims were dismissed as against three of the five defendants; and there was no class or collective action recovery, so the extent to which plaintiffs "prevailed" must be qualified.

Accordingly, the fees sought by CSM Legal, P.C. should be reduced by at least, say, 60% in view of excessive and duplicative time for vaguely-stated time logged for the fee application.

<u>No Fees Should Be Awarded for Mr. Faillace or His Firm</u>[9]

This very issue (not addressed by plaintiffs' attorneys) was squarely addressed in a fee application filed after Mr. Faillace's suspension, wherein Mr. Faillace's claimed fees disallowed in their entirety, in a similar application, of which plaintiffs' attorneys were directly aware, but do not mention:

> [T]he omission [in the fee application] of the findings by the
> Southern District Grievance Committee [as to Mr. Faillace] makes

---

[9]In the application, in a footnote, it is stated: "No funds will be distributed to Mr. Faillace unless an application is made to the Court on his behalf, and an order is entered to that effect," but nothing more is stated, and Mr. Faillace's qualifications are advanced. Bodo Decl. ¶ 8 & n.1 (ECF No. 95). This oblique reference has been rejected as insufficient. *Lazaro v. Best Fish Mkt. Corp.*, No. 1:21-cv-5305-BMC, 2022 U.S. Dist. LEXIS 17015, *7 (E.D.N.Y. Jan. 29, 2022).

> these disclosures misleading. Few "reasonable, paying clients" are going to retain an attorney who is going to be suspended for, among other things, stealing settlements from clients. Nor can the fact that his conduct had not been publicly disclosed when he worked on this case excuse the non-disclosure; just like anyone else making an investment (here, plaintiffs invest their causes of action with their attorneys), the hypothetical client posited by cases like *Arbor Hill* must be viewed as having all material information.
>
> When viewed in that light, this Court will not allow any recovery as a result of Mr. Faillace's time spent on this case. . . . [T]he Court is reaching this result because in the area of wage litigation, trust between lawyers and clients is particularly important—plaintiffs are generally unsophisticated; may not speak English; and, indeed, may have no legal status in the United States. They are an especially vulnerable group of clients. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) ("the FLSA is a uniquely protective statute ... enacted to prevent abuse by unscrupulous employers, and remedy the disparate bargaining power between employers and employees. ... [T]he need for such employee protections [exists] even where the employees are represented by counsel ... ") (citation omitted). Once a court has lost confidence in the integrity of a lawyer seeking court approval for compensation, as this Court has with regard to Mr. Faillace, it is difficult to conclude that any fee for that lawyer's effort should be awarded. That is why the representation from the successor firm that there will be no distribution to Mr. Faillace without a court order is insufficient; the reasonable value of his services that a fully informed client would pay is likely zero and certainly not $450 per hour.

*Lazaro v. Best Fish Mkt. Corp.*, No. 1:21-cv-5305-BMC, 2022 U.S. Dist. LEXIS 17015, *8-9 (E.D.N.Y. Jan. 29, 2022).

And what about the fees sought for Mr. Faillace's various associates during the time he and his firm represented the plaintiffs (prior to November 8, 2011)? Presumably, Mr. Faillace's associates were paid during their employment, and did not depend on eventual recovery for payment. (None of those attorneys submits a declaration claiming otherwise.) Nor is there evidence submitted that they somehow stood to be paid *extra* from recovery of attorney's fees, or

that they were actually partners or equity holders[10] in Mr. Faillace's practice.[11] Therefore, presumptively, there is no basis to award fees to Mr. Faillace's former associates.

What about CSM Legal, P.C. having been sold or otherwise being a successor-in-interest to Mr. Faillace's (former) firm? There is no evidence that Mr. Faillace's firm or its assets (such as receivables or claims for accrued fees) were sold or otherwise transferred to CSM Legal, P.C., which remains opaque as to its engagement. There are, of course, circumstances, albeit limited, under which a law practice permissibly can be "sold" by an attorney under the New York Rules of Professional Conduct, specifically, Rule 1.17 thereof, which involve "[a] lawyer retiring from a private practice of law" or where there is a "a personal representative of a deceased, disabled or missing lawyer," though these require "[w]ritten notice of the sale shall be given jointly by the seller and the buyer to each of the seller's clients" that includes five enumerated categories of information. Since no such circumstances exist here, nor has there been any such notice, it can be presumed that CSM Legal, P.C., or any of its attorneys, have not been lawfully sold any residual claims for fees by Mr. Faillace or his firm. Therefore, it would be inappropriate to award fees for any attorneys formerly associated with Mr. Faillace or his firm. We are not aware of any authority to the contrary, though we acknowledge that this is an unusual, and fortunately rare, situation.[12]

---

[10]If they were partners of Mr. Faillace, they could bear responsibility for Mr. Faillace's violations. *See* Rule 5.1(d)(2) of the Rules of Professional Conduct. (We do not suggest that is the case here.)

[11]Mr. Faillace invariably named his firm "Michael Faillace *& Associates*, P.C." And if he had partners (or "members"), they would perforce be ineligible for fees.

[12]If there are attorneys who are owed compensation on account of their work with Mr. Faillace's firm on this case, they should be permitted to make fee applications as appropriate, on their own.

Therefore, any fees sought for attorneys other than those associated with CSM Legal, P.C. should be excluded, as should any disbursements.

Prejudgment Interest

The contours of prejudgment interest in "FLSA" cases have been drawn in this court:

> Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015). Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017). Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages. *See, e.g., id.; Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))). As a result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Rest. Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 U.S. Dist. LEXIS 72678, 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).
>
> Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL *is* also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 U.S.

> Dist. LEXIS 48503, 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 U.S. Dist. LEXIS 70966, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 70571, 2013 WL 2152176 (May 17, 2013). Prejudgment interest is also not available on awards made for wage-statement or wage-notice violations. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).
>
> "Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 U.S. Dist. LEXIS 141811, 2015 WL 6125436, at *4; *see also* N.Y. C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":
>
>> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*
>
> *Alvarez v. 215 N. Ave. Corp.*, No. 13cv7049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation). It is within the court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

*Cazares v. 2898 Bagel & Bakery Corp.*, No. 1:18-cv-5953-AJN-DF, 2022 U.S. Dist. LEXIS 65113, *33-35 (S.D.N.Y. Apr. 7, 2022) (report and recommendation), *adopted*, 2022 U.S. Dist. LEXIS 81202 (S.D.N.Y. May 4, 2022) (except for certain computations); *Cabrera v. 1560 Chirp Corp.*, No. 1-15-cv-8194-TPG-DF, 2017 U.S. Dist. LEXIS 33380, *21-23 (S.D.N.Y. Mar. 6, 2017) (report and recommendation), *adopted*, 2017 U.S. Dist. LEXIS 53368 (S.D.N.Y. Apr. 6, 2017) (same).

Prejudgment interest should be curtailed accordingly.

Conclusion

The fees application by CSM Legal, P.C. should be reduced substantially, in the exercise of discretion; no fees should be awarded for Mr. Faillace, his firm or their associates; prejudgment interest should be limited as stated above; with such other and further relief as may be just.

Dated: May 20, 2022                                   Respectfully submitted,

                                                                              _____
                                                                                    Andrew P. Saulitis

       LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants Blossom West Inc.*
  *and Ramiro Ramirez*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
Email: apslaw@msn.com

VIA ECF TO:

CSM LEGAL P.C.
*Attorneys for Plaintiffs*
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
jbarton@csm-legal.com
jarret@csm-legal.com